IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRIAN NELSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Civil No. **03-254-JPG** |
| ) | |
| **CARL MILLER,** ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Brian Nelson is before the Court requesting a preliminary injunction and expedited ruling. **(Docs. 12, 13 and 15).** Defendant Miller does not oppose an expedited ruling, but contends that Nelson is not entitled to injunctive relief. **(Docs. 14 and 16).** In accordance with 28 U.S.C. §§ 636(b)(1)(B) and (C), this Court makes the following Report and Recommendation.

## The Complaint

Plaintiff Brian Nelson is in the custody of the Illinois Department of Corrections, housed at Tamms Correctional Center. Nelson has brought suit pursuant to 42 U.S.C. § 1983, alleging that defendant Carl Miller, the prison chaplain, violated his First Amendment right to freely practice his religion, the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1), and Illinois Religious Freedom Restoration Act (775 ILCS 35/1 et seq.). **(Doc. 2).** Nelson, a Catholic, adheres to the Rule of St. Benedict, which prohibits eating the meat of all four-legged animals. While growing up, Nelson attended St. Benedict's parish and parochial school. Chaplain Miller, a Lutheran, denied plaintiff's request for a religious diet, citing a passage from Chapter 39 of *St. Benedict's Rule for Monastaries*, pp. 6-7, indicating St.

1

Benedict's Rule applies to monks living in monasteries, serving under Abbots.  **(Doc. 2, Exhibit J).**  Plaintiff contends that the documentation he submitted from two Catholic priests should have been sufficient to support his claim to a vegan or vegetarian diet pursuant to St. Benedict's Rule. **(*See* Doc. 2, Exhibits H and I).**

### The Standard for Injunctive Relief

Insofar as plaintiff seeks a preliminary injunction–

> The purpose of a preliminary injunction is to minimize the hardship to the parties pending resolution of their lawsuit.  In assessing whether a preliminary injunction is warranted, the party seeking the injunction must demonstrate that: 1) it has a reasonable likelihood of success on the merits of the underlying claim; 2) no adequate remedy at law exists; and 3) it will suffer irreparable harm if the preliminary injunction is denied.  If the court is satisfied that these three conditions have been met, it then must consider whether the irreparable harm the applicant will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted.  In addition, the court must determine whether the preliminary injunction will harm the public interest.

***Anderson v. U.S.F. Logistics (IMC), Inc.,*** **274 F.3d 470, 474-475 (7th Cir. 2001) (internal citations omitted).**

### Analysis

The First Amendment guarantees the free exercise of religion.   At the same time, prisoners' constitutional rights may be restricted by the fact of confinement and the needs of the penal institution.  ***See Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125 (1977).**   "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion."  ***Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996).**

"[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to

2

others to merit First Amendment protection." ***Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 1429 (1981).** However, the Court of Appeals for the Seventh Circuit has recognized that the sincerity of plaintiff's beliefs are also subject to scrutiny because prisoners have been known to adopt unusual religious practices solely to harass prison personnel. ***See Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988).** A prisoner need not strictly adhere to every tenet of his faith in order to prove the sincerity of his beliefs– prisons are not to act as religious police. ***Id.*** "[I]n the case of a church that, unlike the Roman Catholic Church or the Church of England, is not hierarchical– [for example] the Rastafarian church or sect is not hierarchical– who is to say at what precise point orthodoxy becomes apostasy?" ***Id.***

The Religious Land Use and Institutionalized Persons Act prohibits imposing a substantial burden on the religious exercise of a person, even if the burden results from a rule of general applicability, unless the government demonstrates that the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. **42 U.S.C. § 2000cc-1(a).** Similarly, the Illinois Religious Freedom Restoration Act prohibits imposing a substantial burden on religion, absent a compelling governmental interest. **775 ILCS 35/15.** "'Exercise of religion' means an act or refusal to act that is substantially motivated by religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious belief." **775 ILCS 35/5.**

Although plaintiff does not assert an Eighth Amendment claim relating to the adequacy of his nutrition, the Court recognizes that prisons have an obligation to provide nutritionally adequate food. ***French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985);** *see also **Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996).** Plaintiff complains that he is not getting adequate

3

nutrition when he has to "eat around" the meat and exclude items where meat is mixed in with vegetables and starch items.  According to plaintiff, "In late August, the food (other than meat) became even more scarce.  One meal I was not able to eat anything more than 12 lima beans, a small salad, apple sauce and one slice of bread."  **(Doc. 15, Affidavit of Nelson).**   Plaintiff asserts that he has suffered weight loss, depression and mental anguish.

The sincerity of plaintiff's beliefs is not generally questioned.  Rather, defendant Miller questions whether St. Benedict's Rule is applicable to plaintiff.  In turn, plaintiff questions why Miller did not consult Catholic religious leaders or representatives before denying plaintiff's request for a religious diet, as is suggested, but not mandated, by 20 Ill. Admin. Code § 425.70(c).  Plaintiff contends that the two letters he has produced to Miller support his entitlement to a vegan or vegetarian diet.

Father Jerome D. Fortenberry, C.M., opines: "Of course it is permissable [sic] for any Catholic to [follow the Rule of St. Benedict].  It is also permissable [sic] & highly recommended that they follow the diet."  **(Doc. 2, Exhibit H).**

Father Dominic J. Roscioli, recognizing the isolation of the prison setting, and in an apparent attempt to reconcile the application of monastic rules to one who is not a monk per se, opines:

> In a sense then, the prisoner might indeed be living the life of a monk.  Actually, the word 'Monk' comes from the Latin word 'Monos' which means one . . . . [sic] referring to The Holy One-God.  A Monk then is seen as a person who strives to be at-one with the Holy One, thus the name Monk.
>
> Since Brian is in correspondence on a spiritual journey with me and also with a monk from the Abbey of Gethsemani in Trappist[,] KY, I believe that he could be considered a monk "outside the walls' of the Monastery.

**(Doc. 2, Exhibit I).**  Father Roscioli listed the Benedictines, present day Cistercians and present

day Trappists, and some Franciscans as vegetarian Catholic orders.  **(Doc. 2, Exhibit I).**   The materials submitted by Father Roscioli list multiple Biblical references to vegetarianism.

Although Father Roscioli's explanation confirms that St. Benedict's Rule is aimed at monks, not lay people, he has established that there is a recognized religious basis for adhering to a vegetarian or vegan diet and St. Benedict's Rule.  However, by plaintiff's own account, he is only restricted from eating the flesh of four-legged animals, which is less stringent than a vegetarian or vegan diet.  St. Benedict's Rule does not prohibit eating chicken, turkey, fish or eggs.  In addition, unlike Muslim and Kosher diets, there are no prohibitions regarding the flesh of four-legged animals "touching" other food items.  Therefore, unlike the situation presented in *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990), not eating the offensive meat items is an option.

According to Bonnie Sullivan, a registered dietician and the Dietary Manager at Tamms, even if one omits the meat item from the regular meal tray, there are still adequate calories and protein to meet recommended daily allowances.  **(Doc. 14, Exhibit A).**  The data provided by Sullivan indicates that it is recommended that an adult male, at a medium activity level, should consume 2,800-3,000 calories per day, and the regular prison menu, without *any* meat items, provides an average of 2,600-3,000 calories. So, the calorie count is "close."  However, the Court recognizes that plaintiff is housed at Tamms where activity is severely limited.  Moreover, plaintiff can eat chicken, turkey, fish and eggs, which Sullivan estimates provide an additional 66-80 grams of protein– above the recommended 63 grams.  Plaintiff's complaints about a single meal on a single day in August, out of the three meals served daily, do not convince the Court that the regular meals served are nutritionally inadequate, particularly after reviewing the master

menu submitted by defendant.  **(Doc. 14, Exhibit 1).**

It appears that plaintiff Nelson can adhere to the Rule of St. Benedict and receive adequate and proper nutrition while being served the regular meals plan at Tamms.  Therefore, it does not appear that he will be successful on any of his claims, or that he will suffer irreparable harm if the preliminary injunction is denied.  Since there is no apparent violation of the First Amendment, the Religious Land Use and Institutionalized Persons Act, or the Illinois Religious Freedom Restoration Act, injunctive relief would be inappropriate, regardless of the fact that there would be little or no hardship in serving plaintiff a special diet.

### Recommendation

For the aforestated reasons, it is the recommendation of this Court that plaintiff Nelson's motion for a preliminary injunction **(Doc. 12 )** be denied.  Insofar as plaintiff has moved for an expedited ruling on his motion for injunctive relief **(Doc. 15)**, there appears no need for expedited ruling, but in any event that motion will be rendered moot when the district court rules on this Report and Recommendation.

**SUBMITTED:  March 3, 2005**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**