IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIAN NELSON,

    Plaintiff,

v.

CARL MILLER,

    Defendant.

Civil Case No. 03-254-CJP

## ORDER

**PROUD, Magistrate Judge:**

Plaintiff Brian Nelson, an inmate in the custody of the Illinois Department of Corrections, incarcerated at Tamms Correctional Center. His amended complaint alleges that defendant Carl Miller, the chaplain at Tamms, refused to allow him to receive a diet that comported with the requirements of his religion, in violation of the "free exercise" and "establishment" clauses of the First Amendment, the "equal protection" clause of the Fourteenth Amendment, the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1), and the Illinois Religious Freedom Restoration Act (775 ILCS 35/1, et seq.). **(Doc. 33).** Before the Court is defendant Carl Miller's motion for summary judgment and memorandum in support thereof. **(Docs. 45 and 46).** Defendant argues:

    1.    Plaintiff has failed to exhaust administrative remedies regarding the denial of a diet based on a religious requirement that he abstain from eating all meat;

    2.    Injunctive relief is no longer an available remedy because there is no continuing violation, as plaintiff is now receiving a vegan diet;

    3.    Sovereign immunity bars official capacity claims for monetary damages;

    4.    Qualified immunity bars individual capacity claims for damages; and

    5.    Plaintiff's pendant state law claim should be dismissed if defendant obtains summary judgment on all federal law claims.

**Relevant Procedural History**

The analysis of defendant's motion requires an understanding of both the amended complaint **(Doc. 33)**, which is controlling at this juncture, and the original complaint **(Doc. 2)**.

Plaintiff signed the complaint on January 24, 2003, filed suit in state court on February 20, 2003, and the action was removed to federal court on April 23, 2003. **(Docs 1 and 2).** The complaint described plaintiff as a Roman Catholic who also follows the Rule of St. Benedict, which forbids eating "the flesh meat of any four[-]legged animal at any time." **(Doc. 2, pp. 4-5 and 14).** From plaintiff's perspective, defendant Miller, a Lutheran, was supplanting the true, documented requirements of plaintiff's religion with his own limited interpretation of the general Catholic faith. **(Doc. 2, pp. 6-7 and 12).** Furthermore, plaintiff observed that Muslims were permitted to receive a vegan diet that comported with their religious beliefs. **(Doc. 2, p. 17).** Plaintiff's claims were based upon the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Illinois Religious Freedom Restoration Act ("IRFRA"); and the Court construed plaintiff's reliance upon 42 U.S.C. § 1983 as incorporating the First Amendment– presumably the "free exercise" and "establishment" clauses. **(Docs. 2 and 9).**

Plaintiff's amended complaint was filed July 17, 2006, and also revolves around the defendant's refusal to authorize a diet that complied with the requirements of plaintiff's faith. **(Doc. 33).** However, the amended complaint outlines an evolution of faith premised upon the practice of his childhood of not eating meat on Fridays and during Lent, adding adherence to the Rule of St. Benedict regarding abstaining from eating the flesh of four-legged animals, and ending with a stricter construction of St. Benedict's Rule that bars the consumption of all meat. **(Doc. 33, pp. 3-4).** In addition to the RLUIPA, IRFRA and First Amendment Claims from the original complaint, a Fourteenth Amendment "equal protection" claim is added to the mix. Taking full advantage of the federal notice pleading standard, plaintiff does not pin any particular claim to any particular date or period within the evolution of his beliefs.

2

Three grievances plaintiff pursued are also relevant to the analysis of defendant's motion for summary judgment.[1]  Two grievances were pursued prior to the filing of the original complaint in this case.  The third grievance was pursued during the pendency of this case, and fully exhausted prior to the filing of the amended complaint.

The first grievance **(Doc. 50-4, pp. 6-9 (as numbered in the CM-ECF system))** was lodged May 8, 2002.  Plaintiff complained that, as a Roman Catholic, he was forbidden to eat "flesh meat" on Fridays and during Lent, and that non-Catholic chaplains were imposing their beliefs upon him.  Plaintiff wanted a vegan diet on Fridays and during Lent, but he indicated his willingness to accept a vegan diet on a daily basis for the sake of convenience.  Plaintiff cited a religious reference document and Father Fortenberry, the Catholic priest serving Tamms, in support of his request for a religious diet.  The fact that Muslims and Buddhists at Tamms were permitted vegan diets was noted by plaintiff.  This grievance was denied at the institutional level, and ultimately by the Illinois Department of Corrections Administrative Review Board.  **(Doc. 5-4, pp. 10-11 (as numbered in the CM-ECF system)).**

The second relevant grievance **(Doc. 50-4, pp. 12-13 and 15 (as numbered in the CM-ECF system))** was submitted September 15, 2002.  Plaintiff essentially complained that Chaplain Miller denied his request for a religious diet out of ignorance, having failed to consult Father Fortenberry or the Rule of St. Benedict.  Plaintiff explained that his religious beliefs as a Catholic following the Rule of St. Benedict forbade eating "the flesh meat of four[-]legged animals."  In denying the grievance at the institutional level, prison officials noted that plaintiff had declared himself a "Catholic," and, per Chaplain Miller, until plaintiff can establish that he is a Cenobic monk he will not be provided with the requested vegan diet.  **(Doc. 50-4, p. 14 (as numbered in the CM-ECF system)).**  The grievance was subsequently denied by the Illinois

---

[1]Additional grievances and letters were submitted by plaintiff to prison officials, but the Court need only address grievances that were pursued through the institutional process and ultimately denied by the Administrative Review Board.

Department of Corrections Administrative Review Board. **(Doc. 50-5, p. 1 (as numbered in the CM-ECF system)).**

The third grievance was submitted November 13, 2005. **(Doc. 50-5, pp. 2-3 (as numbered in the CM-ECF system)).** Plaintiff claimed discrimination because non-Christians were allowed to participate in the Christian celebration of Christmas, but non-Muslims were not allowed to participate in Muslim celebrations. More specifically, plaintiff complained that Muslims were receiving bean pies and oranges to mark a religious feast day, and his request for a bean pie and orange was denied because he is admittedly Catholic. Plaintiff also asserted that Chaplain Miller held him to a stricter standard regarding the dietary requirements of his religion. The grievance was denied at the institutional level and by the Illinois Department of Corrections Administrative Review Board based on the fact that a Catholic is not required to participate in Muslim feast days. **(Doc. 50-5, pp. 4-5  (as numbered in the CM-ECF system)).**

On April 12, 2006, in response to a formal request, defendant Miller approved a vegan diet "[b]ased on the seriousness of his religion," and that diet was further approved by the warden of Tamms. **(Doc. 50-7, p. 9 (as numbered in the CM-ECF system)).**

## Standard of Review

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c).** The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* **477 U.S. 317, 322 (1986).** The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* **at 325.** Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 255 (1986);** *Cain v. Lane,* **857 F.2d 1139, 1142 (7th Cir. 1988).**

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* **475 U.S. 574, 586-87 (1986).** Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex,* **477 U.S. at 324.** In other words, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* **475 U.S. at 586.** Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.,* **883 F.2d 1307, 1312 (7th Cir. 1989).** Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986);** *Hedberg v. Indiana Bell Tel. Co.,* **47 F.3d 928, 931 (7th Cir. 1995).**

### Exhaustion of Administrative Remedies

According to the Prison Litigation Reform Act:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

**42 U.S.C. § 1997e(a).**

The Court of Appeals for the Seventh Circuit held in *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir. 1999), that exhaustion of administrative remedies, while not jurisdictional per se, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. Exhaustion means that the prisoner has "complete[d] the administrative process by following the rules the state has established for that process." *Pozo v. McCaughtry,* **286 F.3d 1022, 1023 (7th Cir. 2002).** "Any other approach . . .

would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem-or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner." *Id.* **at 1023-24.** "Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense." ***Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000).**

The grievance procedures applicable to the Illinois Department of Corrections are set forth under Title 20 of the Illinois Administrative Code, Sections 504.800–504.850**.** A grievance must be pursued through the institutional system and ultimately be denied by the Administrative Review Board. **20 Ill.Admn.Code §§ 504.810 - 850.** Prior to May 1, 2003, the Illinois Administrative Code did not prescribe any required degree of specificity. ***Compare* 20 Ill.Admn.Code § 504.810(b) (2002)** *and* **20 Ill.Admn.Code § 504.810(b) (2003)***; see also* ***Strong v. David*, 297 F.3d 646, 649-650 (7th Cir. 2002);** ***Barnes v. Briley*, 420 F.3d 673, 679 (7th Cir. 2005).** However, effective May 1, 2003:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill.Admn.Code § 504.810(b) (2003).**

There has never been any question that plaintiff exhausted administrative remedies relative to the original complaint. Defendant now argues, "[a]lthough the plaintiff filed numerous grievances, he never connected the dots and alerted the prison officials through the grievance process about the problem that he now complains of in his Amended Complaint." **(Doc. 46, p. 7).** Defendant appears to be focusing on the changes in the amended complaint's broadening of the dietary restriction from "the flesh meat of any four[-]legged animal" to *all*

6

meat.  (*See* **Doc. 46, p. 3 ¶ 13 and p. 7).**  Citing plaintiff's grievances and deposition testimony, defendant first observes that at the time the original complaint was filed plaintiff's belief was that he had to abstain from only the meat of four-legged animals.  (***See*** **Doc. 50-4, pp. 6-9; Doc. 50-4, pp. 12-13; and Doc. 46-3, p. 12 (all as numbered in the CM-ECF system)).**  Defendant then offers the affidavit of Jackie D. Miller, Chairperson of the Administrative Review Board, who states that during the time frame between January 24, 2003, when the original complaint was signed, and April 23, 2003, when the action was removed to federal court, plaintiff did not exhaust a grievance regarding the belief that he had to abstain from all meat.  **(Doc. 46-2).**  However, Ms. Miller does acknowledge that the Board's records contain grievances complaining about defendant Miller; indicating he abstains from eating meat; and complaining that he is being persecuted and being denied a religious diet.  **(Doc. 46-2).**

In general, exhaustion of administrative remedies is required *before* a case may be brought, even if exhaustion is accomplished during pendency of the case.  *See* **42 U.S.C. § 1997e(a);** *Perez*, **182 F.3d at 534-37; and** *Booth v. Churner*, **532 U.S. 731, 739 (2001).**  However, in *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005), the Court of Appeals for the Seventh Circuit recognized an exception to the rule, whereby fully exhausted claims could be raised by amending an already pending complaint, in lieu of initiating a new proceeding.  The *Cannon* exception would be applicable to plaintiff's November 13, 2005, grievance regarding the Muslim feast, but the crucial question remains, did plaintiff's exhausted grievances pertain to the issues asserted in the amended complaint?  Each claim will be addressed in turn, as they are not all legally and factually identical, as defendant suggests.

### The "Free Exercise" Claims

The First Amendment to the Constitution of the United States protects the "free exercise" of religion.  "An inmate retains the right to exercise his religious beliefs in prison."  ***Kaufman v. McCaughtry***, **419 F.3d 678, 681 (7th Cir. 2005) (citing** *Tarpley v. Allen County*, **312 F.23d**

7

**895, 898 (7th Cir. 2002)).** As previously stated, the amended complaint alleges constitutional and statutory violations of two distinct religious beliefs, existing at two distinct times: (1) plaintiff's belief that he must abstain from the flesh meat of four-legged animals; and (2) plaintiff's belief that he must abstain from all meat. With respect to the amended complaint, the broadening of the dietary restriction to all meat clearly effects the "free exercise" claim, because grievances regarding each separate belief must be exhausted.

Defendants have never asserted that plaintiff did not exhaust administrative remedies relative to his early belief that his religion forbade eating the flesh meat of four-legged animals. In any event, plaintiff's September 15, 2002, grievance explained that his religious beliefs as a Catholic following the Rule of St. Benedict forbade eating "the flesh meat of four[-]legged animals." **(Doc. 50-4, pp. 12-13 and 15 (as numbered in the CM-ECF system)).** Therefore, plaintiff has exhausted administrative remedies as to that particular "free exercise" claim.

By plaintiff's own admission, at the time the original complaint was filed, he had not yet come to believe that his religion forbade the eating of all meat. **(Doc. 46-3, p. 12 (all as numbered in the CM-ECF system)).** It is axiomatic that, if plaintiff did not believe at a particular time that his religion forbade eating all meat, he could not have meant for his grievance to pertain to that belief, even though his loose language and general references to the Rule of St. Benedict could have led one to conclude that followers of the Rule of St. Benedict were forbidden from eating all meat. Therefore, plaintiff's May 8 and September 15, 2002, grievances **(Doc. 50-4, pp. 6-9, 12-13 and 15 (as numbered in the CM-ECF system))** cannot carry the day for plaintiff.

This situation is distinguishable from that presented in *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir.), cited by plaintiff. In *Riccardo,* the prisoner-plaintiff had been raped by a fellow inmate, and his *post*-assault grievance that "'[T]he administration don't [sic] do there [sic] job. [A sexual assault] should've never [sic] happen again.'" was deemed sufficient under the "notice

8

pleading" standard for grievances in effect at the time. *Id.* Although the same vague "notice pleading" standard was applicable when plaintiff lodged his two grievances in 2002, the alleged wrong had yet to occur. It would be ludicrous to stretch the "notice pleading" standard to apply to wrongs that had not occurred, based upon a belief plaintiff had not adopted.

Plaintiff's November 13, 2005, grievance states in part:

> It is not a tenet of Muslim faith that they receive anything special for feast day, Bean Pie yet *I am held to strict rules by Chaplain Miller in denying me a diet that conforms to my faith, beliefs and is required*, I feel discriminated against by this and offended that I am denied part of a meal Bean Pie & orange because I am a Christian!

**(Doc. 50-5, pp. 2-3 (as numbered in the CM-ECF system) (emphasis added).**

Although the grievance specifies that Chaplain Miller is the alleged wrongdoer, and the denial of a religious diet is mentioned, "factual details regarding each aspect of the offender's complaint" required by the more recent version of 20 Ill.Admn.Code § 504.810(b) are missing. The mention to plaintiff's own religious diet would have sufficed under the old "notice pleading" standard, but it is so oblique and lacking in specificity that it fails to satisfy the new "fact-pleading" standard. Plaintiff's prayer for relief in the grievance is telling: "I want a Bean Pie & Orange for all Catholic Feast days. Don't allow Muslims non-Christians to participate in Christmas." **(Doc. 50-5, p. 2 (as numbered in the CM-ECF system)).** There is simply no indication that plaintiff intended to complain about or remedy being denied a meatless diet based on his religion. And, prison officials never recognized the grievance as asserting a claim about plaintiff being denied a meatless diet. Therefore, plaintiff has failed to exhaust administrative remedies relative to this particular "free exercise" claim.

### Establishment Clause Claims

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." The "establishment clause" is applicable to the states through the Fourteenth Amendment. ***Cantwell v. State of***

*Connecticut,* **310 U.S. 296, 303 (1940).** This principle mandates government neutrality with respect to a particular religion, between religion and nonreligion, between different religions, and between sects of a religion. *Kaufman v. McCaughtry*, **419 F.3d 678, 682 (7th Cir. 2005).**

The amended complaint alleges: (1) Muslims and followers of other religions are granted vegan diets as required by their respective religions, while plaintiff has been denied a vegan diet; (2) no pork is served to anyone at Tamms because Muslims and Jews are forbidden by their religions to eat pork; and (3) Chaplain Miller, a Lutheran minister, imposed his own interpretation of Catholic doctrine regarding a vegan diet on plaintiff, over the opinions of other Catholic religious authorities.

Defendant does not specifically address the "establishment clause" claim. As discussed above, defendant's exhaustion argument hones in on the fact plaintiff's religious beliefs and the complaint have been amended to include a ban on all meat. Defendant never challenged that claim in the original complaint based on the exhaustion requirement. Thus, the key inquiry would appear to be whether that change is material to the "establishment clause" claim.

Central to the establishment clause is government *neutrality*. *McCreary County v. American Civil liberties Union*, **545 U.S. 844,___, 125 S.Ct. 2722, 2733 (2005);** *Vision Church v. Village of Long Grove*, **468 F.3d 975, (7th Cir. 2006).** Thus, in plaintiffs situation the focus is on how Chaplain Miller perceived and/or handled the dietary requirements of plaintiff's particular religion, *and* how Miller treated plaintiff's religious requirements vis-a- vis the dietary requirements of Muslims and other religions. The Court does not perceive that the particulars of plaintiff's religious diet is essential to the establishment clause claim– to the question of neutrality. In any event, plaintiff's May 8 and September 15, 2002, grievances (filed during the "notice pleading" era) raised all of the aforementioned establishment clause issues. **(Doc. 50-4, pp. 6-9, 12-13 and 15 (as numbered in the CM-ECF system)).** Plaintiff's

November 13, 2005, grievance (filed after the switch to "fact pleading") also raised the establishment clause issues. **(Doc. 50-5, pp. 2-3 (as numbered in the CM-ECF system)).** Plaintiff was contrasting how Muslim feast days and Christian feast days were treated differently, and he specifically complained that Chaplain Miller held him to a stricter standard regarding the dietary requirements of his religious diet. Plaintiff's omission of the specifics of his religious diet is not essential to the neutrality issue. This is sufficient factual detail for purposes of 20 Ill.Admn.Code § 504.810(b) because, in contrast to plaintiff's free exercise claim, the specifics of the diet are not essential to understanding the claim. Therefore, plaintiff has exhausted administrative remedies regarding all aspects of his "establishment clause" claim(s).

### Equal Protection Claims

The "equal protection" clause of the Fourteenth Amendment protects one from disparate treatment based on membership in a protected class, such as religion. ***Greer v. Amesqua,* 212 F.3d 358, 370 (7th Cir. 2000).** The amended complaint alleges: (1) Muslims and followers of other religions are granted vegan diets as required by their respective religions, while plaintiff has been denied a vegan diet; and (2) no pork is served to anyone at Tamms because Muslims and Jews are forbidden by their religions to eat pork, but the dietary requirements of no other religions are imposed upon all prisoners. Obviously, the "equal protection" claim overlaps the "establishment clause" claim. Therefore, no additional analysis of the "equal protection" claim is necessary. Plaintiff has merely labeled what is essentially the same First Amendment claim with another constitutional label. ***See Conyers v. Abitz*, 416 F,3d 580, (7th Cir. 2005); and *Graham v. Connor*, 490 U.S. 386, 395 (1989).** Administrative remedies have been exhausted.

### The RLUIPA Claim

The Religious Land Use and Institutionalized Persons Act (RLUIPA),42 U.S.C. § 2000cc-1, provides: "No government shall impose a substantial burden on the religious exercise

of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." **42 U.S.C. Section 2000cc-1(a).**

The amended complaint alleges that defendant Miller's refusal to approve plaintiff's request for a vegan diet placed a substantial burden on plaintiff's ability to follow the requirements of his religion. Thus, RLUIPA mirrors the First Amendment "free exercise" claim. Therefore, for the reasons fully explained in relation to the free exercise claim, only that part of plaintiff's claim relating to abstaining from the meat of four-legged animals has been exhausted.

## Injunctive and Declaratory Relief

The amended complaint seeks both declaratory judgment and injunctive relief. Noting that plaintiff was granted a religious/vegan diet effective April 12, 2006 **(*see* Doc. 50-7, p. 9 (as numbered in the CM-ECF system))**, defendant Miller asserts that those two remedies are no longer available to plaintiff because there is no continuing violation.

In contrast, plaintiff contends defendant Miller did not voluntarily grant plaintiff a vegan diet, and there is no assurance plaintiff will be allowed to remain on a vegan diet. Citing Miller's recent affidavit **(Doc. 46-4, p. 4, ¶ 26 (as numbered in the CM-ECF system))**, plaintiff also asserts that defendant Miler continues to act as the arbiter of religious interpretation and holds inmates to an overly strict and unconstitutional standard.. Specifically, plaintiff takes issue with Miller insisting a religious diet be a "requirement of the offender's religious tenets." *Id.* Plaintiff frames this issue in terms of mootness.

Defendant Miller has now approved a vegan diet "[b]ased on the seriousness of [plaintiff's] religion," and that diet was further approved by the warden of Tamms. **(Doc. 50-7, p. 9 (as numbered in the CM-ECF system)).** It is undisputed that plaintiff is now receiving a religious/vegan diet that satisfies both his early belief that he could not eat the meat of four-

legged animals and his current belief that he is forbidden to eat all meat. In such a situation, the Court's power to grant injunctive relief will only survive if further relief is needed. "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility. . . ." ***U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953);** *see also* ***Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).**

There is no reasonable expectation that the vegan diet will be withdrawn, particularly since defendant Miller apparently approved the religious diet using an *overly strict* standard.[2] Plaintiff's attempt to parse the language of the approval in a manner to suggest that Miller really does not believe plaintiff qualifies for a religious diet is not reasonable. And, since the requested injunction pertains only to providing plaintiff with a vegan diet **(Doc. 33, p. 10)**, and plaintiff is receiving that diet, it is irrelevant whether the written prison policy reflects an overly strict standard for obtaining a religious diet; that issue falls within the ambit of the request for declaratory relief. A grant of declaratory relief would have the same practical effect as an injunction.

More to the point, "[w]hen a claim for injunctive relief is barred but a claim for damages remains, a declaratory judgment as a predicate to a damages award can survive." ***Crue v. Aiken*, 370 F.3d 668, 677 (7th Cir. 2004);** *see also* ***Penny Saver Publications, Inc. v. Village of Hazel Crest*, 905 F.2d 150, 153 (7th Cir. 1990).** That is the very situation at bar. Therefore, although plaintiff's prayer for injunctive relief is now moot– or not ongoing– his quest for declaratory relief may proceed.

---

[2] Defendant Miller's affidavit indicates he requires a special diet to be a "requirement" of the of the religion. **(Doc. 46-4, p. 4, ¶ 26 (as numbered in the CM-ECF system)).** The written approval of the vegan diet purports to be based on the "seriousness" of plaintiff's religion. **(Doc. 50-7, p. 9 (as numbered in the CM-ECF system)).** However, "the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." ***Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 715-716 (1981).** And, RLUIPA bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion, see 42 U.S.C. § 2000cc-5(7)(A).

**Official Capacity Claims for Damages**

Defendant Miller is sued in both his individual and official capacities. In addition to injunctive and declaratory relief, plaintiff seeks monetary damages on all claims. Defendant contends all claims for monetary damages against him in his official capacity are barred by the Eleventh Amendment. Plaintiff concedes that monetary damages against defendant in his official capacity are barred relative to plaintiff's Section 1983 constitutional claims, but such damages are available under the RLUIPA and IRFRA claims.

Monetary damages may only be sought from the defendants individually; official capacity suits are actually suits against the State and the Eleventh Amendment bars such damages actions. ***Kentucky v. Graham,* 473 U.S. 159, 166-167 and 169 (1985).** Thus, the crucial questions are: (1) do RLUIPA and IRFRA permit monetary damages from a defendant in his official capacity, individual capacity or both; and (2) does Eleventh Amendment immunity apply?

**RLUIPA**

To date, there is no controlling decision regarding damages under RLUIPA. The act provides for "appropriate relief against a government." **42 U.S.C. § 2000cc-2(a).** "Government" includes a state, department or agency thereof, and any person acting under color of State law. **42 U.S.C. § 2000cc-5(4)(A).** Therefore, based on the plain language of the statute, both official capacity and individual capacity actions are available. Accordingly, "appropriate relief" would mean the remedies available based on the capacity of the defendant. Thus, unless there is a waiver or abrogation of Eleventh Amendment sovereign immunity from suit for monetary damages in an official capacity suit, only declaratory and injunctive relief is available. This Court finds no such waiver or abrogation.

RLUIPA does not, on its face, abrogate sovereign immunity. Moreover, "Congress cannot override the State's immunity using an Article I power such as the Spending Clause

14

legislation." ***Cherry v. University of Wisconsin System Board of Regents***, **265 F.3d 541, 554 (7th Cir. 2001).** RLUIPA was enacted pursuant to the Spending and Commerce Clauses– both Article I powers. ***Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005);** *see also* **42 U.S.C. § 2000cc-1(b).**

Is undisputed that RLUIPA is applicable to Illinois and the Department of Corrections based on the receipt of federal funds. *See* **42 U.S.C. § 2000cc-1(b)(1); and *Cutter*, 544 U.S. at 716 n. 4 (observing that every State accepts federal funding for its prisons).** However, RLUIPA does not specify that receipt of federal funds acts to waive sovereign immunity. The mere receipt of federal funds does not effect a waiver of sovereign immunity and Congress must unambiguously express its intent for such a quid pro quo waiver. ***Cherry*, 265 F.3d at 554.**

Plaintiff's assertion that the provision in IRFRA that a person "may obtain appropriate relief against a government" supports a finding of waiver of its sovereign immunity with respect to RLUIPA is unfathomable.

For the aforestated reasons, the Eleventh Amendment bars monetary damages against defendant Miller insofar as he is sued in his official capacity. Declaratory relief remains available. Injunctive relief would theoretically be available, but for reasons detailed above, that remedy is moot.

### **IRFRA.**

The Illinois Religious Freedom Restoration Act (IRFRA) provides:

> Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest.

**775 ILCS 35/15.** A person may obtain "appropriate relief against a government." **775 ILCS 35/20.** "Government" is defined to include "Government" is defined as including "a branch,

department, agency, instrumentality and official (or other person acting under color of law) of the State of Illinois or a political subdivision of the State, including a home rule unit." **775 ILCS 35/5.** Therefore, by its plain language, IRFRA leaves open the possibility of monetary damages. Had the State legislature wanted to limit the available remedies, it certainly could have used more specific language. Therefore, monetary damages are available under IRFRA. *See generally Oak Grove Jubilee Center, Inc. V. City of Genoa*, **808 N.E.2d 576, 615 (Ill.App. 2nd Dist. 2004) (monetary relief from defendant city for loss of property due to violation of IRFRA deemed possible).**

### Qualified Immunity and Individual Capacity Claims for Damages

Defendant attempts to bootstrap a few legal principles together to reach the conclusion that qualified immunity bars plaintiff from obtaining damages from Miller in his individual capacity. Frankly, the Court found this argument, as drafted, very hard to follow, but will nevertheless attempt to analyze it.

Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known. *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 737 (7th Cir. 1994). "Qualified immunity shields an official from suit when [he or] she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he or] she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *see also Hosty v. Carter*, 412 F3d 731, 739 (2005). There is no arguing with these basic principles.

Defendant initially asserts that, even if he is found to have violated plaintiff's constitutional rights, refusing plaintiff a vegan diet until plaintiff demonstrated the diet was required by his religion was no more than negligence. Then, citing *Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986), defendant intimates that plaintiff has attempted to frame what is truly an official capacity suit as also an individual capacity suit in order to avoid the previously

16

discussed Eleventh Amendment bar to monetary damages. Building on these points, defendant Miller claims qualified immunity with respect to the individual capacity claims based on his personal involvement. Presumably, defendant's argument hinges on the notion that negligence is insufficient to establish liability under Section 1983. **See Daniels v. Williams,** **474 U.S. 327, 330 (1986);** *Lewis v. Anderson,* **308 F.3d 768, 773 (7th Cir. 2002).**

Whether defendant Miller was negligent or deliberate is a question of fact the Court– the trier of fact in this case– must decide. At this juncture, even considering the parties' depositions and trail of grievances, many material questions of fact remain, particularly if the reasonableness of Miller's understanding of the law is to be assessed. It is unclear whether Miller was merely adhering to institutional policy and acting in his official capacity as chaplain. It is also unclear how Miller treated the documentary evidence plaintiff had submitted relative to his religious dietary requirements at varying times. Therefore, whether qualified immunity will shield Miller cannot be decided at this point..

### Supplemental Jurisdiction

Assuming all of plaintiff's claims would be dismissed, defendant would have the Court decline to exercise supplemental jurisdiction over plaintiff's IRFRA claim. Because federal claims persist, the Court will continue to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**IT IS THEREFORE ORDERED** that defendant Miller's motion for summary judgment **(Doc. 45)** is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is warranted insofar as:

1. Plaintiff has failed to exhaust administrative remedies relative to his "free exercise" claim based on the belief he must abstain from all meat;
2. Plaintiff's prayer for injunctive relief is moot; and
3. Monetary damages against defendant in his official capacity are barred

relative to plaintiff's Section 1983 constitutional claims;

**IT IS SO ORDERED.**

**DATED: January 30, 2007**

                **s/ Clifford J. Proud**
                **CLIFFORD J. PROUD**
                **U. S. MAGISTRATE JUDGE**