IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BRIAN NELSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. **03-254-CJP** |
| | ) | |
| **CARL MILLER,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

This matter is before the Court for further proceedings following remand. See, ***Nelson v. Miller***, **570 F.3d 868 (7th Cir. 2009)**. The Court now makes the following findings of fact and conclusions of law.

## 1. Qualified Immunity

The Court determines that defendant Miller is not entitled to qualified immunity on plaintiff's First Amendment claim.

The events giving rise to this lawsuit occurred from April, 2001, through April, 2006. ***Nelson*, 570 F.3d at 871-874.** The Seventh Circuit held that Mr. Miller substantially burdened Mr. Nelson's exercise of his religion in two ways: by requiring that he provide documentation that his religion required a meatless diet, and by denying his requests for such a diet. ***Nelson*, 570 F.3d at 878-879.**

In ***Koger v. Bryan*, 523 F.3d 789 (7th Cir. 2008)**, the Seventh Circuit held the defendants did not have qualified immunity for a claim brought under RLUIPA based on substantially the same actions by defendants. The events giving rise to the claims in ***Koger*** occurred during the same period of time, i.e., May, 2001, through December, 2006. ***Koger*, 523 F. 3d at 793-795.** The Court noted that "the components of [RLUIPA] analysis have been used in constitutional

1

analysis for some time." ***Koger***, **523 F.3d at 802.** The court held that it was well established at the relevant time that requiring clergy verification or requiring that the practice be required by recognized tenets of an organized religion violate the Free Exercise clause:

> Likewise, in requiring clergy verification, the prison officials employed a clergy-as-arbiter-of-orthodoxy standard that had long been rejected. See *Frazee,* 489 U.S. at 834, 109 S.Ct. 1514 (rejecting "the notion that to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious organization" and holding that the believer's sincerity is the appropriate consideration); *Jackson,* 196 F.3d at 320 (rejecting a prison's policy of deferring to Jewish authorities on the question of whether an inmate is Jewish for the purposes of providing a kosher meal, and directing the prison officials to consider the sincerity of the inmate's beliefs).

***Koger***, **523 F.3d at 803.**

For the reasons discussed in ***Koger***, it was clearly established at the relevant time that defendant Miller's actions violated plaintiff's First Amendment rights. Therefore, the Court finds that Mr. Miller is not entitled to qualified immunity on plaintiff's First Amendment claim.

**2.      Claim under IRFRA**

There is no case from the Seventh Circuit Court of Appeals or the Illinois Supreme Court deciding whether defendant can be sued in his individual capacity under the Illinois Religious Freedom Restoration Act (IRFRA), 775 ILCS 35/1, et seq. However, other District Courts in this Circuit have held that an individual capacity claim is barred by sovereign immunity.

In ***Banks v. Dougherty***, **2010 WL 747870 (N. D. Ill, 2010)**, the Northern District held that plaintiff could not bring an individual capacity claim under IRFRA because the source of the duty the defendant violated existed solely by virtue of the defendant's state employment. See, ***Banks***, at *9-11. ***Banks*** relies on an Illinois Supreme Court case (which did not involve IRFRA) and is well-reasoned. In ***Boyd v. Wright***, **2011 WL 77713 (C.D. Ill, 2011)**, the Central District agreed with ***Banks*** and held that there is no individual capacity claim under IRFRA against defendants who denied requests for religious meals.

This Court agrees with the reasoning of ***Banks*** and **Boyd**, and likewise holds that an

individual capacity claim under IRFRA is barred by sovereign immunity. Thus, the individual capacity claim under IRFRA is dismissed. In addition, as directed by the Seventh Circuit, the official capacity claim under IRFRA is dismissed as that claim is within the exclusive jurisdiction of the Illinois Court of Claims. **See, *Nelson*, 570 F.3d at 885.**

### 3.     Compelling government interest and least restrictive means

The Seventh Circuit held that requiring clergy verification and denying Nelson a meat-free diet substantially burdened the free exercise of his religion. The Seventh Circuit directed this Court to determine on remand whether "defendant's procedures and conduct" were in furtherance of a compelling state interest and, if so, were the least restrictive means. See, ***Nelson*, 570 F.3d at 889**.

Defendant takes issue with applying the compelling state interest standard here. He argues that, with respect to a First Amendment claim, he is required to show only that his actions were reasonably related to legitimate penological interests. Plaintiff aptly points out that defendant did not move for rehearing in the Court of Appeals or seek Supreme Court review, and this Court is bound by the Seventh Circuit's decision. It is unnecessary for this Court to wade into this controversy, however, since defendant's evidence fails to meet even the lower legitimate penological interests test.

Relying on ***Turner v. Safley*, 107 S. Ct. 2254 (1987)**, defendant argues that his actions were reasonably related to restricting the flow of contraband. Restricting the flow of contraband in a prison is a legitimate interest. However, the evidence cited by defendant does not establish that there was a rational connection between requiring clergy verification or denying plaintiff a meatless diet and restricting the flow of contraband. In view of the conditions at Tamms Correctional Facility, it is difficult to understand how placing Mr. Nelson on the vegan diet plan

would allow someone to pass contraband to him.[1]  Further, defendant's argument assumes that accommodating Mr. Nelson's request would have required the prison to create a special diet plan just for him, i.e., one that was meatless only on Fridays and during Lent.  However, as the Seventh Circuit made clear, Mr. Nelson offered from the beginning to accept a vegetarian diet for all meals, which was already available at Tamms.  See, ***Nelson*, 570 F.3d at 871-872.**

"[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational."  ***Turner*, 107 S. Ct. at 2262.**  Here, the logical connection between defendant's actions and restricting the flow of contraband is tenuous at best.

## <u>4.</u>  <u>Damages on First Amendment claim</u>

Mr. Nelson testified that he was forced to "eat around" the meat in the regular diet, and to forego eating almost all food at some meals, for example, spaghetti with meat sauce.  ***Nelson*, 570 F.3d at 874.**  The IDOC's dietician testified that the regular diet would probably not provide sufficient nutrition if all meat were skipped.  Mr. Nelson testified that he lost weight, felt hungry and was depressed and anxious.  The Seventh Circuit stated that the "undisputed evidence shows, at the very least, that Nelson would be required to forego adequate nutrition on Fridays and for the forty days of Lent."  ***Nelson*, 570 F.3d at 880**.  Thus, the Court finds that plaintiff has established that he is entitled to actual damages.

Plaintiff suggests that he should be awarded $10.00 for each Friday, and an additional $10,000.00 for Lent in 2002.  The Court finds that $10.00 per day across the board is reasonable.  The period in question totals 298 days (259 Fridays plus 39 days of Lent, excluding the Fridays, which have already been counted).  Therefore, the Court awards plaintiff a total of $2, 980.00 in actual damages.

---

[1]The Court takes notice of the description of the conditions at Tamms set forth by District Judge G. Patrick Murphy in *Westefer v. Snyder*, 00-162-GPM, Doc. 540.

Plaintiff's request for punitive damages is denied.

## Conclusion

The Court finds as follows:

1.    Defendant is not entitled to qualified immunity on plaintiff's First Amendment claim.

2.    The Court finds in favor of plaintiff on his First Amendment claim and awards him actual damages in the amount of $2, 980.00.  The Court finds that plaintiff is not entitled to punitive damages.

3.    Plaintiff's individual and official capacity claims under IRFRA are dismissed.

The clerk of court is directed to enter judgment in accordance with the above.

**IT IS SO ORDERED.**

**DATE:        December 19, 2011.**


                         **s/ Clifford J. Proud**
                         **CLIFFORD J. PROUD**
                         **UNITED STATES MAGISTRATE JUDGE**